ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 16 2006
CLERK, U.S. DISTRICT COURT
By _____
   Deputy

| | |
|---|---|
| A. CAL ROSSI,<br><br>            Plaintiff,<br><br>v.<br><br>FRANK WOHL, Individually, and<br>LANKLER, SIFFERT & WOHL,<br>LLP,<br><br>            Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>CIVIL ACTION NO.<br>3-06-CV-0292-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, and for Failure to State a Claim, filed on March 21, 2006. The Court finds that it lacks personal jurisdiction over Defendant Frank Wohl ("Wohl") and Defendant Lankler, Siffert & Wohl, L.L.P. (erroneously called Lankler, Seiffert & Wohl in the Complaint) ("the Firm") (collectively, "Defendants"). As further detailed, Defendants' Motion to Dismiss is GRANTED.

### I. FACTUAL BACKGROUND

A. Cal Rossi ("Plaintiff" or "Rossi"), is the Vice President of Basic Capital Management, Inc. ("BCM"). He was indicted by a grand jury in the Southern District of New York in June of 2000. The indictment included charges of racketeering, securities fraud, and wire fraud.

Shortly after his indictment, Rossi hired Defendants to represent him. Rossi was then and remains a Texas resident. The Firm's offices are in New York City and it does not have offices

1

in Texas. Defs.' App. at p. 002. Rossi and Defendants entered into a retainer agreement by which American Realty Trust, Inc. ("ART") and BCM agreed, jointly and severally, to pay the fees and expenses for Defendants' representation of Rossi. Defs.' App. at 005. The retainer agreement further provided that only if ART and BCM became unwilling or unable to pay such fees and expenses, Rossi would be obligated to pay them. Defs.' App. at 005. There is no choice of law provision in the retainer agreement.

As part of their representation of Rossi, Defendants retained several experts and consultants who sent their invoices to Defendants. Defendants claim they sent invoices for experts and consultants to Rossi and BCM. Defs.' App. at 002. Defendants called Rossi in Texas and made three trips to Texas in connection with their representation of him. Pl.'s App. at 007. Plaintiff was acquitted of all charges in February 2002.

After February 2002, Defendants were not paid for invoices they submitted for their services and those of experts and consultants they retained to assist in their defense of Rossi. On December 19, 2002, the Firm and the experts and consultants it retained, except FTI Consulting, Inc. ("FTI"), filed suit against Rossi in the Southern District of New York for payment of the amounts due (the "Lankler Suit"). The Firm represented itself and all of the other plaintiffs in the Lankler Suit. On June 3, 2003, FTI, also represented by the Firm, filed suit in the Southern District of New York against Rossi for services it provided in connection with the criminal case against Rossi (the "FTI Suit"). Both the Lankler Suit and the FTI Suit were decided against Rossi by summary judgment and affirmed by the Second Circuit Court of Appeals.

The Firm obtained an Order for registration in Texas of the Judgment in the Lankler Suit. The Firm filed three Motions for Ex Parte Turnover for itself and the other plaintiffs in the

Lankler Suit in the Northern District of Texas (Case No. 3:04-mc-00081) in which it has so far obtained three Ex Parte Turnover Orders. Pl.'s App. 076-081. The Firm also filed a garnishment proceeding against Rossi and BCM in Texas state court. Pl.'s App. 088-096.

In the present case, Rossi seeks recovery from Defendants for breach of fiduciary duty and fraud, claiming he was damaged by (1) Defendants' entry into agreements with experts and consultants on his behalf; (2) Defendants' alleged failure to forward or send the experts' and consultants' bills to Rossi for approval; and (3) Defendants' representation of the experts and consultants in the Lankler Suit and the FTI Suit.

## II. STANDARD OF REVIEW

### A. PERSONAL JURISDICTION

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). If the district court "rules on the motion without an evidentiary hearing, the plaintiff may satisfy its burden by presenting a prima facie case for jurisdiction." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). In deciding whether the plaintiff has made a prima facie case, the Complaint's uncontroverted allegations must be taken as true, and factual conflicts must be resolved in favor of the plaintiff. *Id.* However, even "uncontroverted facts must still be sufficient to affirmatively show personal jurisdiction." *Kisiel v. RAS Sec. Corp.*, No. 3:01-CV-294-X, 2001 WL 912425, at *3 (N.D. Tex. Aug. 9, 2001) (Kendall, J.) (internal citation omitted).

The Court may exercise personal jurisdiction over a nonresident defendant if (1) the

Texas long-arm statute provides a basis for personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with the Constitution's due process requirements. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because the Texas long-arm statute "reaches to the constitutional limits," the Court need only concern itself with the due process analysis. *Id.* at 470.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant if:

> (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and
> (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 2001) (internal citations omitted).

In order to establish the minimum contacts required to satisfy due process, a nonresident defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Int'l Transactions, Ltd. v. Embotelladora*, 277 F. Supp. 2d 654, 666 (N.D. Tex. 2002) (Fish, C. J.) (quoting *Hanson v. Denckla*, 57 U.S. 235, 253 (1958)). Unilateral activity by the plaintiff cannot constitute the basis for finding contacts by a defendant with the forum state. *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 289 (5th Cir. 1978) (citing *Hanson*, 57 U.S. at 253); *see also Goodworth Holdings Inc. v. Suh*, No. 3:00-CV-1871-M, 2001 WL 910388, *3 (N.D.Tex. Aug. 3, 2001) (Lynn, J.). Two categories of personal jurisdiction satisfy the requisite minimum contacts: "acts specific to the instant suit, which grant a court specific jurisdiction over a defendant; or transactions, although

unrelated, that are of such a 'continuous and systematic' nature as to be 'sufficient to allow a court to assert [general] jurisdiction over the party.'" *Lexington Servs. Assocs., Ltd. v. 730 Bienville Partners, Ltd.*, No. 3:01-CV-1180-M, 2001 WL 1545764, at *2 (N.D. Tex. Dec. 3, 2001) (Lynn, J.).

## III. ANALYSIS

### A. PERSONAL JURISDICTION

Plaintiff asserts that Defendants established sufficient minimum contacts in Texas to establish specific jurisdiction by contracting with and agreeing to represent him, a Texas citizen, and by sending bills and placing phone calls to Texas seeking payment for services rendered, communicating false information to Plaintiff in Texas, and by filing the collection actions in state and federal court in Texas. Plaintiff does not assert general jurisdiction over Defendants and could not do so, because the contacts alleged were not "systematic and continuous." The Court will first address personal jurisdiction over Wohl and then will separately address personal jurisdiction over the Firm.

The act of contracting with a resident of the forum does not constitute purposeful availment where the agreement does not involve "continuing obligations and wide-reaching contacts." *Stangel v. Johnson & Madigan*, P.L.L.P., No. 3:99-CV-1518-D, 1999 WL 1134962, *3 (N.D. Tex. Dec. 8, 1999) (Fitzwater, J.) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985)). Courts look primarily to the place of performance to determine whether a contract with a Texas resident is sufficiently purposeful to constitute minimum contacts by the nonresident. *See Jones v. Pett-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992); *Barnstone*, 574 F.2d at 288; *Goodworwth Holdings*, 2001 WL 910388 at *3. Particularly

5

in the case of a lawyer, the "mere representation of a client in another forum does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum." *Id.* "Even the combination of mailing payments to the forum state, engaging in communications surrounding the execution and performance of a contract, and the fact that a nonresident enters into a contract with a resident are insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a nonresident defendant." *Gundle Lining Constr. Corp. V. Adams County Asphalt, Inc.*, 85 F.3d 201,205 (5th Cir. 1996). In *Stangel*, this Court found that non-resident attorneys were not subject to personal jurisdiction in the Northern District of Texas merely because they communicated with and mailed bills to their Texas client. Here, Wohl represented a Texas resident in criminal proceedings in New York. Wohl's entry into the retainer agreement with Rossi while Rossi was in Texas, and Wohl's phone calls, visits and mailings to Texas, were incidental to his representation of Rossi in that matter, or to obtain payment for his legal services in that matter. Pl.'s App. at 007-008. The Court finds that Wohl's representation of Plaintiff against the criminal charges in New York and the communications and contacts arising out of such representation are insufficient to establish the minimum contacts necessary for personal jurisdiction over Wohl in Texas.[1]

The issues with respect to the Firm are somewhat different, because the Firm filed suit in Texas. When a nonresident defendant seeks affirmative relief from a court in a foreign jurisdiction, it is generally true that the nonresident defendant has thereby purposefully availed itself of the court's jurisdiction with respect to the adjudication of subsequent claims arising from

---

[1] Because the Court finds that Wohl does not have minimum contacts with the forum state, analysis of whether the exercise of jurisdiction over Wohl comports with traditional notions of fair play and justice is not necessary.

the same subject matter. *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 460-61 (5th Cir. 2001). To permit a party "to enjoy full access to a state's courts qua plaintiff while nonetheless retaining immunity from the courts' authority qua defendant in respect to claims asserted by the very party it was suing" would produce an "unjust asymmetry." *Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23-25 (1st Cir. 1991); see also *PaineWebber*, 260 F.3d at 460. One court has noted its difficulty in finding a better "textbook example of a non-resident invoking Texas's benefits and protections than a non-resident filing a lawsuit in a Texas court...and such suit now serves as the basis of Plaintiff's claims." *Kennedy Ship & Repair v. Loc Tran*, 256 F. Supp. 2d 678, 684 (S.D. Tex. 2003).

However, the principle of a suit invoking jurisdiction has been followed when the suit is an independent action for relief. Here, what the Firm did in Texas, for itself and its client, was simply to collect on judgments obtained in New York federal courts.

The registration of judgments for enforcement in other districts is provided for by 28 U.S.C. § 1963, which states:

> "A judgment in an action for the recovery of money or property entered in any court of appeals [or] district court...may be registered by filing a certified copy of the judgment in any other district...A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."

Fed. R. Civ. P. 69 provides for the procedure of executing a judgment, stating in relevant part:

> "Process to enforce a judgment for the payment of money shall be a writ of execution...The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent

that it is applicable."[2]

The registration of a judgment in another district does not create a new judgment in favor of the judgment creditor. *Gullet v. Gullett*, 188 F.2d 719, 720 (5th Cir. 1951); *Juneau Spruce Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 128 F. Supp. 697, 699 (D. Haw. 1955). Registration in another district is "purely a ministerial act in the enforcement of a foreign judgment." *Gullet*, 188 F.2d at 720; *Juneau Spruce*, 128 F. Supp. at 699. In *Gullett*, a judgment creditor obtained a divorce decree in the District of Columbia and registered the judgment in the Southern District of Florida pursuant to 28 U.S.C. § 1963. 188 F.2d at 721. The Southern District of Florida enforced the registered judgment with a garnishment proceeding which, on appeal, the Fifth Circuit characterized as an "ancillary remedy" rather than a new action with a new judgment. *Id.* at 720. In the present case, the Firm's Motions for Ex Parte Turnover and Application for Postjudgment Writ of Garnishment are similarly characterized as ancillary remedies. These actions are distinct from *Interpole*, *Painewebber*, and *Kennedy*, in that they are not independent actions, but rather, are action appurtenant to enforce judgments in litigation that was concluded.

Even if this Court were to hold that these actions by the Firm satisfied the minimum contacts requirement, exercising personal jurisdiction over the Firm in these circumstances would offend traditional notions of fair play and substantial justice. Because the Firm's Motions for Ex Parte Turnover and Application for Writ of Garnishment were to satisfy judgments rendered in New York, to collect from Rossi's assets in Texas, the Firm has not had sufficient minimum

---

[2]Both Turnover Orders and Garnishment Proceedings are remedies provided by Texas statutes and thus are appropriate methods of execution pursuant to Fed. R. Civ. P. 69. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 31.002, 63.001 (Vernon 2006).

contacts with Texas and therefore is not subject to personal jurisdiction in Texas.[3] Were it otherwise, a defendant in completed litigation brought elsewhere could avoid collection efforts in his home state, since collection could subject the creditor to suit in the defendant's home state.

## VI. CONCLUSION

For the reasons herein stated, the court determines that Plaintiff has not established the requisite minimum contacts to warrant the exercise of personal jurisdiction over Wohl or the Firm. Accordingly, the court GRANTS Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and all of Plaintiff's claims are dismissed without prejudice.

**SO ORDERED.**

August 16, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[3] The only other contact the Firm had with Texas arose from the Firm's representation of Rossi in his criminal proceeding and the contacts relating to that representation. The Court has already established in its analysis of personal jurisdiction pertaining to Wohl that those actions are insufficient to establish minimum contacts by Wohl with Texas. The same analysis applies to the Firm.