IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| A. CAL ROSSI, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: |
| | § | |
| FRANK WOHL, Individually, and | § | 3:06-CV-0292M |
| LANKLER, SEIFFERT & WOHL, | § | |
| LLP, | § | |
| | § | |
|    Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment [Docket Entry #77], filed by

Defendants Frank Wohl ("Wohl") and Lankler, Seiffert & Wohl, L.L.P. ("LSW").  Having

considered the parties' extensive briefing, supporting evidence, and the applicable law, the Court

finds that the Motion should be GRANTED.

## FACTUAL BACKGROUND

A. Cal Rossi ("Plaintiff" or "Rossi") is the Vice President of Basic Capital Management,

Inc. ("BCM"), a private advisor to real estate investment trusts.  He was indicted by a grand jury

in the Southern District of New York in June of 2000.  The indictment alleged that Rossi

conspired with others to sell shares of American Realty Trust ("ART"), a real estate investment

trust, to union pension funds by bribing union officials, thereby committing securities fraud, wire

fraud, and violations of the RICO statute.

Shortly after his indictment, Rossi hired Defendants to represent him in the criminal case.

Rossi and Defendants entered into a retainer agreement.  ART and BCM, jointly and severally,

agreed to pay the fees and expenses for Defendants' representation of Rossi.  The retainer

agreement provided that if ART and BCM became unwilling or unable to pay such fees and expenses, Rossi would pay them.

As part of their representation of Rossi, Defendants retained several experts and consultants, including FTI Consulting, Inc. ("FTI"); Decisions Strategies, LLC; Decisionquest, Inc.; Lexecon, Inc.; Cornerstone Research, Inc.; William Purcell; Steve Thel; and Donna Hitscherich.  The Complaint alleges that these entities were required to send invoices for their services not to Rossi, but to the Defendants.  The Defendants would then send the invoices to Rossi and/or BCM.  However, the Complaint alleges that Defendants "did not forward all of the invoices from the individuals/entities to Rossi, and, to the extent Defendants did forward such invoices and the LSW invoices to Rossi, Defendants never informed Rossi that under New York's 'account stated doctrine,' Rossi needed to object to the invoices," and also that Defendants failed to object to the invoices.

In February 2002, Rossi was acquitted of all charges.  After February 2002, neither Defendants nor the experts and consultants they retained were paid for invoices they submitted.

On December 19, 2002, the following entities filed suit against Rossi in the Southern District of New York for services provided for Rossi in the criminal action:[1] LSW; Decisions Strategies, LLC; Decisionquest, Inc.; Lexecon, Inc.; Cornerstone Research, Inc.; William Purcell; Steve Thel; and Donna Hitscherich (the "Lankler Suit").  LSW represented itself and all of the other plaintiffs in the Lankler Suit.

---

[1] The plaintiffs sued for breach of contract, and for relief under the "account stated" doctrine.  The Complaint in this case states that:

> An account stated refers to a promise by a debtor to pay a stated sum of money which the parties have agreed upon as the amount due. According to New York law, it is incumbent upon a party in receipt of an account to examine the statement and make all necessary objections because an agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time, *unless fraud, mistake, or other equitable considerations are shown.*

Second Amended Original Complaint ¶17 (emphasis added).

On June 3, 2003, FTI, also represented by LSW, filed a separate suit in the Southern District of New York against Rossi for services it provided in the criminal case against Rossi (the "FTI Suit").  In both the Lankler Suit and the FTI Suit, summary judgment for the plaintiffs was granted by the trial court on the account stated claims.  The Second Circuit Court of Appeals affirmed.[2]

In this case, Rossi seeks to recover for breach of fiduciary duty and fraud, claiming he was damaged by: (1) Defendants' entering into agreements with the experts and consultants on his behalf; (2) Defendants' alleged failure to forward or send the experts' and consultants' bills to Rossi for approval; (3) Defendants' failure to object to the experts' and consultants' bills; and (4) Defendants' representation of the experts and consultants in the Lankler Suit and the FTI Suit.  Rossi seeks to recover "substantial economic damages" that were proximately caused by Defendants' acts, including "disgorgement of the fees paid to Defendants following Defendants' breach of fiduciary duty."[3]  It is under these facts that the Court must now evaluate Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

I.    *Summary Judgment Standard*

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[4]  "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate

---

[2] The Court will refer to these prior adjudications as the "prior suits" or the "New York actions."
[3] Rossi also seeks to recover attorneys' fees and punitive damages.
[4] *See* FED. R. CIV. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

elements of the nonmoving party's case."[5]  Once the movant carries its initial burden, the burden

shifts to the nonmovant to show that summary judgment is inappropriate.[6]

The nonmovant is required to go beyond the pleadings and designate specific facts that

prove the existence of a genuine issue of material fact.[7]  In determining whether genuine issues

of material fact exist, "factual controversies are construed in the light most favorable to the

nonmovant, but only if both parties have introduced evidence showing that a controversy

exists."[8]  "If the record, taken as a whole, could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial."[9]

Defendants assert that Plaintiff's claims are barred as a matter of law on three different

grounds: (1) Rule 13(a) and the requirement that compulsory counterclaims be asserted, if at all,

in the original suit; (2) res judicata; and (3) collateral estoppel.

## A.  Rule 13(a)

Defendants argue that each of Rossi's claims is a "compulsory counterclaim" that should

have been brought in the New York actions, and that as a result Rossi is barred from raising any

of them in this suit.  "It is a general rule in state and federal courts that a plaintiff must assert in

one action *all of his alleged claims arising from a single occurrence or transaction* and that a

defendant must assert in his answer all of his counterclaims arising therefrom."[10]  This general

rule arises from Federal Rule of Civil Procedure 13(a), which states:

> A pleading *shall state* as a counterclaim any claim which at the time of serving
> the pleading the pleader has against any opposing party, *if it arises out of the*
> *transaction or occurrence that is the subject matter of the opposing party's claim*
> and does not require for its adjudication the presence of third parties of whom the

---

[5] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25).
[6] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[8] *Lynch Props.*, 140 F.3d at 625; *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).
[9] *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).
[10] *Shelley v. The Maccabees*, 191 F.Supp. 742, 745 (E.D.N.Y. 1961) (emphasis added).

court cannot acquire jurisdiction…[except that] The pleader need not state the claim if (A) when the action was commenced, the claim was the subject of another pending action...[11]

In short, Rule 13(a) makes it mandatory for a party to state any claim that he may have against an opposing party if the claim arises out of the same "transaction or occurrence" as the opposing party's claim.  Failure to comply with this mandate bars the party from bringing the claim at a later time.[12]

When a party seeks dismissal of claims under Rule 13, the reviewing court must compare the claims previously asserted with the current claims, and determine if the claims arise out of the same transaction or occurrence, or "series of occurrences with a logical connection."[13]  If so, then the current claims must be dismissed.[14]  The main purpose of the rule is to prevent "fragmentation of litigation" and "multiplicity of suits," and "to achieve resolution in a single suit of all disputes arising out of common matters."[15]

The Fifth Circuit has formulated a test for determining whether a counterclaim is compulsory—an answer in the affirmative to *any* of the following questions indicates that the counterclaim is compulsory, and would therefore be barred from assertion in any subsequent suit:

(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same;

---

[11] FED. R. CIV. P. 13(a) (emphasis added).

[12] *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1 (1974).

[13] *Baker,* 417 U.S. at 469 n. 1 (noting that "[u]nder Rule 13(a)'s predecessor this Court held that 'transaction' is a word of flexible meaning which may comprehend a series of occurrences if they have [a] logical connection, and this is the rule generally followed by the lower courts in construing Rule 13(a)" (citations omitted)).  The Court notes that the application of Rule 13 is procedural, and no choice-of-law analysis is required for this Court to apply the federal procedural rules.  *See, e.g., Pennzenergy Co. v. Wells,* No. 01-30256, 2001 WL 1751405 at *6 (5th Cir. Dec. 17, 2001) (unpublished opinion) ("The district court was not faced with a choice of law issue when it dismissed Ivy's suit, because the suit was dismissed on federal procedural grounds when the district court determined that the suit comprised only claims that should have been pleaded as compulsory counterclaims under Federal Rule of Civil Procedure 13(a)").

[14] *Papadopoulos v. Douglas,* No. 00-20176, 2001 WL 877608 at *3 (5th Cir. July 18, 2001) (unpublished opinion).

[15] *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 627 n.14 (5th Cir. 1996) (citing *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League,* 652 F.2d 852, 854 (9th Cir. 1981) and *S. Constr. Co. v. Pickard,* 371 U.S. 57, 60 (1962)).

(2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule;

(3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and

(4) whether there is any logical relationship between the claim and the counterclaim.[16]

As to the fourth question, the Fifth Circuit explained:

[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.[17]

Finally, there are four exceptions to the mandatory assertion of counterclaims: (a) claims that have not matured at the time of pleading; (b) claims whose adjudication requires the presence of third parties not subject to the jurisdiction of the court; (c) claims that are the subject of a pending suit at the time the main action was filed; and (d) claims where the main action is proceeding without personal jurisdiction over the defendant, i.e., quasi in rem jurisdiction.[18] Importantly, the first exception only applies to maturity of causes of action at the time of pleading, not to the maturity of *damages* at the time of pleading.[19]  However, even claims not typically considered "mature" at the time of pleading are still permitted, in order to promote efficiency and economy.  For example, a counterclaim for contribution is permissible if it arises

---

[16] *Papadopoulos*, 2001 WL 877608 at *2 (citing *Underwriters At Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 n. 2 (5th Cir. 1996) and *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992)).  The *Papadopoulos* court noted that the Fifth Circuit's analysis focuses on "whether the claim and counterclaim share an 'aggregate of operative facts,'" and relies on the "similarity of facts and legal issues" prong.

[17] *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970).

[18] FED. R. CIV. PROC. 13(a)(1)-(2); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 878 (5th Cir. 1998).

[19] *N.Y. Life Ins. Co.*, 142 F.3d at 880 ("Any actual and appreciable injury flowing from the defendant's negligence or other wrongful act establishes a cause of action upon which the plaintiff may sue, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the tortious act."); *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, Nos. 91-CV-1066, 94-CV-423, 1994 WL 722003 at *4 (N.D.N.Y. 1994) (unpublished opinion) ("A close examination of these claims, however, reveals that it is not plaintiffs' causes of action that were immature at the time that they filed their answer, but the extent of their damages… plaintiffs cannot rely upon the 'immature claim' exception to Rule 13(a) to escape the fact that they should have pled these causes of action as compulsory counterclaims").

from the same occurrences in the suit, even though a cause of action for contribution does not

technically mature until the party against whom judgment was rendered overpays for its share of

liability.[20]

## B. Res Judicata

Defendants also argue that res judicata, or "claim preclusion," bars continuation of the

present case because Plaintiff merely "seeks to relitigate the same dispute that he has already

litigated to judgment against the same parties in another Federal court."[21]  This Court must look

to the law of the state where the original judgment was rendered to determine its preclusive

effect.[22]  The prior suits were adjudicated in the Southern District of New York, so this Court

applies New York law to the res judicata analysis.

Claim preclusion under New York law requires: (1) a final judgment; (2) between the

same parties; (3) for the same cause of action.[23]  "Where an identity of the causes of action exists

in both suits, the judgment in the former action is conclusive in the latter, not only as to any

matters actually litigated therein, but also as to *any that might have been litigated*, so that a

different judgment in the second would not destroy or impair rights or interests established by

the first."[24]  This preclusive effect also applies to *defenses* that could have been litigated in the

---

[20] *Oneida Indian Nation of N.Y. v. New York*, 194 F. Supp. 2d 104, 143 n.47 (N.D.N.Y. 2002) (relying on *Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78, 90 (S.D.N.Y. 1973), where the court reasoned that "[t]he Federal Rules of Civil Procedure are designed to encourage the litigation of all the claims arising out of the same occurrences in the same lawsuit").

[21] Defendants' Motion for Complete Summary Judgment at 18.

[22] *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *Am. Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 272 n.20 (5th Cir. 2005) (In assessing whether a claim for indemnification was barred by res judicata, the Fifth Circuit stated: "Prior to the Supreme Court's decision in *Semtek Int'l Inc. v. Lockheed Martin Corp.,* this circuit applied federal law to determine the preclusive effect of a prior judgment by a district court sitting in diversity.  In *Semtek,* however, the Supreme Court held that while federal law ultimately determines whether a federal judgment precludes a subsequent action or argument, *when the basis of the original court's jurisdiction is diversity of citizenship, federal courts should apply the law of the forum state unless the state law is incompatible with federal interests.*" (citations omitted) (emphasis added)).

[23] *Hyman v. Hillelson*, 434 N.Y.S.2d 742, 744 (N.Y. App. Div. 1980).

[24] *Hyman*, 434 N.Y.S.2d at 744 (emphasis added).

original action.[25]

The district court in *Yeiser v. GMAC Mortgage Corporation* recently explained the test for identity of claims, stating:

> New York takes a transactional approach to *res judicata:* "once a claim is brought to a final conclusion, all other claims *arising out of the same transaction or series of transactions* are barred, even if based upon different theories or if seeking a different remedy." In determining what constitutes the same transaction, the court should look to: *how the facts are related in time, space, origin or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations.* Even if there are variations in the facts alleged or different relief is sought, *if the actions are grounded on the same gravamen of the wrong [sic] res judicata applies.*[26]

Accordingly, under New York's transactional approach to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."[27]

With respect to the requirement for identity of parties, a prior judgment is conclusive between the parties against whom the judgment is rendered.[28]  If the second suit involves the same parties as the first suit, then this requirement will be met.[29]  The Supreme Court noted in *Baker* that in no event may preclusion be invoked *against a party* who did not participate in the prior adjudication.[30]  As a result, a plaintiff could avoid summary judgment based on claim preclusion if it demonstrated it was not a party to the prior litigation.

---

[25] *Yeiser v. GMAC Mortgage Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (applying New York state law).

[26] *Id.* at 422 (citations omitted) (emphasis added); *Hyman*, 434 N.Y.S.2d at 745 (citations omitted) (emphasis added) ("A subsequent cause of action does not differ from the first merely because it denotes one of the several separately stated claims arising out of the same foundation facts; or relates to different legal theories of recovery; or demands different legal relief. Rather, *it is the gravamen of the wrong upon which the action is grounded that determines the identity of the causes.*").

[27] *QFI, Inc. v. Shirley*, 874 N.Y.S.2d 238, 239 (N.Y. App. Div. 2009) (citing *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (N.Y. 1981)).

[28] Restatement (Second) of Judgments § 17 (1980).

[29] *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 238 (1998) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5 (1979), where the Supreme Court explained that "[u]nder the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit *involving the same parties or their privies* based on the same cause of action." (emphasis added)).

[30] *Id.* at 238 n.11.

### C. Collateral Estoppel

This Court also applies New York law on the issue of collateral estoppel, or "issue preclusion."[31]  This doctrine "precludes a party from relitigating in a subsequent action or proceeding *an issue* clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same."[32]  For the issue to be precluded, a court must find that an identical issue was *necessarily and actually decided* in a prior action, and also that the issue is decisive in the present action.[33]  There must also have been a "full and fair opportunity" to challenge the previous decision now asserted as controlling.[34]

### ANALYSIS

### I.      Rule 13(a)

To prevail on summary judgment under Rule 13(a), Defendants must demonstrate that no material question of fact exists as to whether the claims now asserted are barred as compulsory counterclaims in the prior actions.  Rule 13(a) requires this Court to look to all claims asserted in the previous lawsuits, rather than just those claims actually adjudicated on the merits.  Claims for breach of contract, account stated, and unjust enrichment were brought in the New York suits, based on Rossi's failure to pay certain fees and expenses associated with his defense to the criminal charges.  Defendants argue that "[t]he factual and legal issues raised by these claims encompassed any factual and legal issues relevant to whether Rossi was liable for LSW's and the Experts' bills," and that "the New York claims put at issue all facts relating to Rossi's obligation to pay the bills, including issues of whether breach of duty or fraud by LSW (as Rossi alleges in

---

[31] *Yeiser,* 535 F. Supp. 2d at 424.
[32] *Id.* (emphasis added) (citing *Ryan v. N.Y. Tel. Co.,* 467 N.E.2d 487 (N.Y. 1984)).
[33] *Id.*
[34] *Id.* (citing *Buechel v. Bain,* 766 N.E.2d 914, 919 (N.Y. 2001)).

this Court) might have relieved Rossi of liability or created a counterclaim or cross-claim against LSW."[35]

Rossi argues that Rule 13(a) does not apply because "Plaintiff's current claims against Defendants are third-party contribution-type claims which, although arguably arising out of the same 'transaction' involved in each of the Experts/Vendors' suit, were not yet 'matured' at the time Plaintiff was served, were contingent upon the outcome of the litigation *vis a vis* the Experts/Vendors and thus wholly outside the purview of Rule 13(a) as a 'compulsory counterclaim,' as a matter of law."[36]  Rossi also argues that his claims against Defendant LSW and Defendant Wohl cannot be considered in the context of past claims by the Experts and Vendors against him because each of these entities' claims were "severable" in the New York suit, and thus must be individually considered now.[37]

The Court finds that the current claims fall within the definition of a compulsory counterclaim under Rule 13(a), and that Rossi is barred from bringing them here.  Looking to the test for compulsory counterclaims in the Fifth Circuit, the Court finds that each of the four questions is to be answered in the affirmative in this case, and thus the claims brought by Rossi are barred.[38]

The first question is whether the issues of fact and law raised by the claim and counterclaim are largely the same.  The original Complaint from the Lankler suit alleged the following:

---

[35] Defendants' Brief in Support of Motion for Summary Judgment at 25-26.
[36] Plaintiff's Response to Defendants' Motion for Complete Summary Judgment at 12.
[37] The Court addresses these arguments in greater detail below.
[38] The four questions are: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.  *Papadopoulos*, 2001 WL 877608 at *3; *Underwriters At Interest on Cover Note JHB92M10582079*, 79 F.3d at 483 n. 2.  Only one affirmative answer is required to satisfy Rule 13(a).

- Generally, that "[s]ince their acquittal, Defendants [Rossi] have failed and refused to make any payments due Plaintiffs and BCM has converted funds rightfully due Plaintiffs."[39]
- Count I alleges breach of contract against Rossi and BCM for the failure to pay LSW for charges incurred on Rossi's behalf as required by the retainer agreement between Rossi and LSW.  Count II relies on the account stated doctrine, and lists specific dates on which LSW rendered to Rossi and BCM "full and true accounts of the services performed and moneys due plaintiff LSW."  This count further alleges that the "LSW accounts were delivered to, accepted, and retained by defendants Rossi and BCM without objection," and then reiterates the sum total due to LSW from Rossi.
- Count V alleges breach of contract for the defendants' failure to pay for services provided by plaintiff DSFX, which conducted investigative work on Rossi's behalf.  Count VII asserts an account stated claim on the invoices for these services, and alleges that the "DSFX account… was delivered to, accepted, and retained by defendants Rossi and BCM without objection."
- Count XII alleges breach of contract for the defendants' failure to pay for expert services provided by plaintiff DecisionQuest.   Count XIII asserts an account stated claim on the invoices for these expert services, and states that the "plaintiff DecisionQuest accounts were delivered to, accepted, and retained by [d]efendants without objection."
- Count XVI alleges breach of contract for the defendants' failure to pay for expert services rendered in connection with the defense of Rossi provided by plaintiff Lexecon.   Count XVII brings an account stated claim on the invoices for these expert services, and states that "plaintiff Lexecon rendered to plaintiff LSW for the benefit of Defendants full and true accounts of the services performed and moneys due plaintiff Lexecon… The Lexecon accounts were delivered to, accepted, and retained by [d]efendants without objection."
- Count XX alleges breach of contract for the defendants' failure to pay for expert services rendered by plaintiff Purcell.   Count XXI asserts an account stated claim on the invoices for these expert services.
- Count XXIV alleges breach of contract for the defendants' failure to pay for expert services provided by plaintiff Thel.   Count XXV asserts an account stated claim on the invoices for these expert services.
- Count XXVIII alleges breach of contract for the defendants' failure to pay for expert services rendered by plaintiff Hitscherich.   Count XXIX asserts an account stated claim on the invoices for these expert services.
- Count XXXII alleges an account stated claim by plaintiff Cornerstone for services rendered to LSW for the benefit of Rossi and the other defendants in the original case.

The original Complaint from the FTI suit alleged the following:

- Count I alleges breach of contract against Phillips for the failure to pay for

---

[39] Appendix to Defendants' Brief ("App.") at 14.

services rendered on Phillips' and Rossi's behalf in the criminal action.

- Count II asserts an account stated claim against Rossi, BCM, and Phillips.  It alleges that the FTI accounts were delivered to, accepted, and retained by defendants without objection, and that no part of the sum due has been disputed by defendants as being owed to FTI.
- Count III alleges conversion against BCM, based on the account stated between FTI and the defendants.
- Count IV alleges unjust enrichment against the defendants for the provision of expert analysis and opinions without compensation by the defendants.

In sum, the questions of fact raised by the prior claims center around the formation of agreements to provide expert services for a fee in the criminal action, the delivery of resulting invoices for the services performed, acceptance of and failure to object to the invoices, retention of the invoices, and the failure to pay the invoices.  The issues of law center around breaches of the agreements to pay, and on the existence of an account stated between each of the plaintiffs and Rossi.

Rossi's Complaint in this action asserts the following facts:

- The experts/consultants were required to submit their invoices to Defendants LSW and Wohl, not Rossi, for payment because Rossi was not a party to any of the agreements;
- Defendants did not forward all of the invoices from the experts/consultants to Rossi, and if forwarded, did not inform Rossi that he needed to object to these invoices to avoid account stated liability, and failed to object themselves;
- Defendants agreed to represent the plaintiffs in the prior action knowing that the plaintiffs' claims would prevail because they had not specifically objected to the bills the plaintiffs sent.

Rossi's Complaint in this action raises the following legal issues:

- The actions and conduct of the Defendants constitute breach of fiduciary duty and fraud
- Rossi is entitled to the disgorgement of fees paid to Defendants as a result of Defendants' breach of fiduciary duty

The Court finds that the issues of fact and law raised in the New York actions and by Rossi's claims all center around the agreements with, and invoices from, the experts and consultants retained in connection with Rossi's criminal defense, and are largely the same.  The

issues of who entered into the agreements, who received the invoices, and if anyone accepted and/or objected to the invoices and the legal consequences of that appear in both matters.[40] Thus, the issues of fact and law are the same, and Rossi's claims are now barred as compulsory counterclaims.

The second question is whether even without Rule 13(a) res judicata would bar a subsequent suit. The Court finds that res judicata bars the instant suit. Under New York law, res judicata prevents assertion of claims after a final judgment has been rendered between the same parties, for the same claims. "Where an identity of the causes of action exists in both suits, the judgment in the former action is conclusive in the latter, not only as to any matters actually litigated therein, but also as to *any that might have been litigated*, so that a different judgment in the second would not destroy or impair rights or interests established by the first."[41] This preclusive effect also applies to defenses that could have been litigated in the original action.[42]

In this case, there was a final judgment, as the district court in New York granted summary judgment for the plaintiffs on their account stated claims.[43] To prevail on an account stated claim, a plaintiff must provide prima facie proof that it rendered invoices to the defendant, that the defendant retained the invoices without objecting to them within a reasonable period of time, and that a sum certain remained unpaid.[44] "The receipt and retention of an account without

---

[40] The Complaint alleges that Defendants "agreed to represent these individuals/entities [the experts] in the prosecution of the account stated claims against Rossi, knowing that the claims would prevail because the Defendants herein did not specifically object to the bills that these individuals/entities sent (after receiving them, while acting as Rossi's counsel)," and that such an agreement constituted a breach of fiduciary duty or fraud. *See* Complaint at ¶¶19, 23, and 27. This same issue arose in the prior suit, where Rossi moved to disqualify Defendants from representing the experts, and "argued that the entitlement to sue a former client for the purpose of collecting legal fees and costs did not extend to representation of experts and consultations." *See* Affidavit of Frank H. Wohl in Opposition to Defendants' Motion to Disqualify Counsel at ¶10, App. at 571. Thus, this issue was clearly present in the prior suits, and is now barred.
[41] *Hyman*, 434 N.Y.S.2d at 744 (emphasis added).
[42] *Yeiser*, 535 F. Supp. 2d at 421.
[43] The judgments were affirmed by the Second Circuit Court of Appeals.
[44] *Berkman Bottger & Rodd, LLP v. Moriarty*, 871 N.Y.S.2d 135, 136 (N.Y. App. Div. 2009); *Rona-Tech Corp. v. LeaRonal, Inc.*, 680 N.Y.S.2d 264, 264-65 (N.Y. App. Div. 1998).

objection within a reasonable period of time entitles a plaintiff to summary judgment on the account independent of the original obligation… [but] [t]here can be no account stated where no account was presented or where any dispute about the account is shown to have existed."[45]

Importantly, "the party receiving the account is bound to examine the statement and object to it, if objection there be.  Silence is deemed acquiescence and warrants enforcement of the implied agreement to pay."[46]  The rationale behind recovery under the account stated doctrine is that the parties have, by their conduct, "evidenced an agreement upon the balance of an indebtedness."[47]  In its analysis, the court in *Reisman, Peirez & Reisman, L.L.P. v. Gazzara* relied on the following statement by Judge Cardozo:

> There is no doubt that an account stated may sometimes result from the retention of accounts current without objection. But the result does not always follow. It varies with the circumstances that surround the submission of the statements and those circumstances include, of course the relation between the parties.[48]

The court went on to explain that one of the "circumstances" to be considered is whether an objection has been made to the account within a reasonable time.  However, any circumstances that call into question the existence or validity of such an agreement would be relevant to the adjudication of an account stated claim.  Because an "account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due," res judicata will bar re-litigation of any matters relating to

---

[45] *Pat Pellegrini Flooring Corp. v. Serota*, No. 2007-971 Q C, 2008 WL 2832133 at *2 (N.Y. App. Div. July 10, 2008) (unpublished opinion) (citing *Abbott, Duncan & Wiener v. Ragusa,* 625 N.Y.S.2d 178 (N.Y. App. Div. 1995); *Waldman v. Englishtown Sportswear,* 460 N.Y.S.2d 552,  (N.Y. App. Div. 1983)).

[46] *SDS Co., Inc. v. Ilyssa Mfg. Corp.*, No. 32812/05, 2007 WL 178274 at *2 (N.Y. App. Div. Jan. 25, 2007) (unpublished opinion) (citing *Chisholm-Ryder Co. v. Sommer & Sommer,* 421 N.Y.S.2d 455 (N.Y. App. Div. 1979); *Rodkinson v. Haecker,* 248 N.Y. 480 (N.Y. 1928)).

[47] *Reisman, Peirez & Reisman, L.L.P. v. Gazzara*, No. 2823/02, 2007 WL 949436 at *2 (N.Y. App. Div. Mar. 30, 2007) (unpublished opinion).

[48] *Id.* (citing *Newburger-Morris Co. v. Talcott*, 219 N.Y. 505, 512 (N.Y. 1916)).

the agreement between the parties, as well as any possible defenses to the account stated.[49]

Defenses to an account stated claim include: (1) evidence that no account was presented;[50] (2) evidence as to why the defendant failed to pay the invoices;[51] (3) evidence that the defendant or its agent did not order certain goods or services, or lacked the apparent authority to do so;[52] and/or (4) evidence that otherwise raises a genuine issue of fact as to whether the defendant objected to the invoices, orally or in writing.[53]  Rossi's main defense in opposition to summary judgment on the account stated claim in the prior suit was that he repeatedly disputed the reasonableness of the charges for Defendants' and some experts' services, after his insurer declined to pay them.  Rossi further contended that fact questions remained regarding the actual receipt of the invoices, and with respect to the accounting practices employed in connection with some of the claims made.[54]

To determine whether res judicata bars the present claims, the Court must ascertain

---

[49] See J.B.H., Inc. v. Godinez, 34 A.D.3d 873, 874 (N.Y. App. Div. 2006).  Defenses to an account stated would involve disputes over presentment of the account, and "any dispute regarding the correctness of the account."  See also Commander Terminals, LLC v. Commander Oil Corp., 867 N.Y.S.2d 373 (N.Y. App. Div. 2008) (unpublished opinion) ("The agreement necessary for an account stated may be express or implied from the retention of an account rendered for an unreasonable period of time without objection and from the surrounding circumstances. An essential element of an account stated is an agreement as to the balance due. Where either no account has been presented, or there is any dispute regarding the correctness of the account, the cause of action fails.").

[50] Commander Terminals, LLC, 867 N.Y.S.2d 373; Morgan, Lewis & Bockius LLP v. IBuyDigital.com, Inc., No. 604442-2005, 2007 WL 258305 at *2 (N.Y. App. Div. Jan. 11, 2007) (unpublished opinion) ("Where a plaintiff's evidence fails to establish that the invoices were properly addressed and mailed, there should be no presumption of receipt, and summary judgment on an account stated claim is inappropriate.").

[51] Merrill/New York Co. v. Celerity Sys, Inc., 300 A.D.2d 206, 207 (N.Y. App. Div. 2002).

[52] Id.

[53] Id. (citing Walter, Conston, Alexander & Green v. Vintage Creations, 203 A.D.2d 203 (N.Y. App. Div. 1994)); Devanlay U.S. Inc. v. Assis., No. 600435/2006, 2008 WL 2042705 at *2 (N.Y. App. Div. May 8, 2008) (unpublished opinion) ("Defendant Assis, on behalf of the corporate defendant, asserts in response that a timely objection was made to the invoices that the goods were non-conforming and not timely delivered. The contending factual allegations of the parties on an essential element of plaintiff's account stated claim warrant denial of summary judgment on that cause of action. 'Oral objections to an account stated are sufficient to defeat a motion for summary judgment.'" Prudential Bldg. Maint. Corp. v. Burton Siedman Assoc., Inc., 86 A.D.2d 519 (N.Y. App. Div. 1982)).

[54] Defendants argued in the prior suit that summary judgment on the account stated was proper because there was no evidence that Rossi ever communicated any objections to the account to his creditors, rather than to the third party insurer.

whether there is an "identity" of claims between the prior suit and the claims in this case.[55]

Rossi's current claims, in part, seek disgorgement of the fees paid to Defendants because of an

alleged breach of fiduciary duty and fraud, based on the Defendants' representation of the

experts in the prior suit, Defendants' failure to forward  and/or to object to the expert invoices,

and/or to advise Rossi that he was required to object to them.  These issues, even if not explicitly

litigated in the prior suit, clearly qualify as claims that could or should have been litigated at that

time as defenses to the account stated claims.  Any evidence relating to Defendants' authority to

enter into the agreements that resulted in the invoices, or to a failure to present the invoices to

Rossi, or to Rossi's objections or non-objections to these invoices, would have precluded the

grant of summary judgment on the account stated claims in the prior suit.  As such, any

subsequent adjudication of these claims by this Court would undoubtedly "destroy or impair

rights or interests established by the first" suit.

New York uses a transactional approach to res judicata, where claims that arise out of the

series of transactions that were adjudicated in the prior suit are barred in subsequent litigation.

This Court looks to "how the facts are related in time, space, origin or motivation; whether they

form a convenient trial unit; and whether treating them as a unit conforms to the parties'

expectations."[56]  The facts in this case center on the agreements to provide expert assistance for

Rossi's criminal defense, the delivery of the invoices for these expert services, and the failure of

Defendants and/or Rossi to object to the invoices.  The facts in the prior suit are from the same

time, and originate from the same source—the non-payment of the invoices.

These facts would not only "form a convenient trial unit" with the facts from the prior

---

[55] *Hyman*, 434 N.Y.S.2d at 744 ("Where an identity of the causes of action exists in both suits, the judgment in the former action is conclusive in the latter, not only as to any matters actually litigated therein, but also as to *any that might have been litigated*, so that a different judgment in the second would not destroy or impair rights or interests established by the first.").

[56] *Yeiser*, 535 F. Supp. 2d at 422.

suit, which involved the rendering of the same expert services and the delivery and receipt and

objection to the same invoices for these services, but the factual predicates for the suits are

nearly identical.[57]  Treating these claims as one trial unit would undoubtedly conform to the

parties' expectations, as liability for payment of the invoices depends entirely on how these

factual questions are resolved.  The facts from both suits are indeed grounded on the same

"gravamen" of the wrong—liability for the unpaid invoices.  As such, the Court finds that the

claims from the prior suit and from the instant case arise out of the same transaction or series of

transactions, and thus constitute the same "claims" for purposes of res judicata.[58]

> The Court must finally determine if identity of parties exists.  Both LSW and Rossi were

parties in the Lankler suit.    Rossi argues that:

> Only through the attempt to characterize the present suit as related to LSW's suit
> for attorneys' fees incurred during the criminal defense, which it is not, or through
> an attempt to characterize LSW's suit as identical and not distinct in any way
> from the individual, and separate, claims of the Experts/Vendors can Defendants
> assert that LSW and Wohl were "parties" in the claims brought against Plaintiff
> by the Experts/Vendors.[59]

Rossi argues that because "the claims made in the previous litigation were completely severable,

involved individual claims, pleadings, motions, proof, and individual judgments," this Court is

precluded from finding an identity of parties between the prior suit and the instant action because

"Defendants were not 'parties' to the claims brought against Plaintiff by the Experts/Vendors."

The Court disagrees.

> First, Rossi overlooks the fact that the Defendants in this case were in fact parties to the

prior action and prevailed on summary judgment on their own account stated claim, in addition

---

[57] The only distinction is found in the orientation of the parties—the prior suit involved the Defendants and the experts seeking to recover on the invoices based on the delivery and retention of the invoices without objection; in the instant case, Rossi seeks to recover based on the failure of the Defendants to forward the invoices, or to warn Rossi of his duty to object to the invoices, or to object to the invoices.  The nucleus of facts is the same; it is merely the arguments surrounding those facts that differ.

[58] *See Yeiser*, 535 F. Supp. 2d at 422.

[59] Plaintiff's Response to Defendants' Motion for Complete Summary Judgment at 20.

to representing the experts and vendors suing Rossi for their own claims.  Defendants' account stated claim was based on Rossi's failure to pay invoices for attorneys' fees incurred in his criminal defense.  Rossi's current claims for breach of fiduciary duty and fraud resulting from Defendants' alleged failure to forward and/or to object to and/or to advise Rossi to object to the expert invoices should have been asserted in the prior action in defense of the claim that Rossi owed the full amount of attorneys' fees.  The Complaint itself notes that under the account stated doctrine, "fraud, mistake, or other equitable considerations" may preclude liability for the amounts due.[60]  Further, Defendants' motion for summary judgment in the prior suit is supported by an affidavit from Wohl stating that no objections as to "quality or the price of professional services or charges" had been received.  Rossi's current claims dispute the "quality" of such services, in claiming that Defendants committed fraud and breached their duties as counsel in relation to the invoices.  Rossi actually seeks disgorgement of the attorneys' fees awarded in the prior action as a remedy in the instant case, which wholly supports the finding that Rossi should have brought his claims at that time to prevent the award of fees in the first place, and is now barred from doing so.  Thus, no matter how the Court construes the "severability" in the prior suit of the experts' claims from the Defendants' claims, the facts in this case arise from the same gravamen of the wrong as the prior action, and identity of parties exists.

Second, merely because multiple plaintiffs join in one suit to recover damages from a defendant does not mean that the defendant is free to later sue each individual plaintiff based on facts related to the other plaintiffs' claims in the prior suit, and claim that no identity of party exists because of the multiplicity of claims and parties in the first suit.  Such a holding would undermine the purpose of joining parties in a single action, and rather than promoting efficiency, economy, and justice, would allow for a proliferation of suits following a final judgment.  This

---

[60] Second Amended Original Complaint ¶17.

the Court will not allow.  Any evidence or objections that Rossi had to any of the account stated

claims should have been produced in the prior action, and so the instant claims are now barred.[61]

Having found identity of claims and parties between the prior suit and the instant action, and that

a final judgment was rendered on the merits in the prior suit, this Court now holds that

Defendants' Motion for Summary Judgment should be granted on the grounds that Rossi's

claims are barred by the doctrine of res judicata.

The third question is whether substantially the same evidence would support or refute the

claims by the experts/consultants and the counterclaim.  The evidence supporting the prior

claims consisted of the invoices for services allegedly performed on Rossi's behalf, the

agreements between Rossi and the Defendants and between Defendants and the plaintiffs in the

New York suits, and evidence of the failure to pay the invoices.  The Court finds that this same

evidence would either support or undermine Rossi's claims in this case—namely, who entered

into the agreements and was thus responsible thereunder, who received the invoices and when

they were received, and whether anyone objected to the invoices so as to avoid account stated

liability.[62]  If Rossi's claims that Defendants never forwarded the invoices to Rossi or that

Defendants, rather than Rossi, were liable for payment of the invoices, or that Defendants

breached certain fiduciary duties in either their failure to object to the invoices or in their

representation of the plaintiffs in the New York suits, the evidence would refute Rossi's liability

---

[61] Rossi also argues that his claims cannot be barred by res judicata because one consulting firm, FTI, brought its claims for unpaid invoices in an entirely separate suit, to which Defendants were not parties, and thus identity of parties cannot exist.  This argument lacks merit.  Rossi's claims against Defendants should have been brought in the prior suit by Defendants against Rossi for the account stated on attorneys' fees.  The existence of a separate suit by FTI does not relieve Rossi of his obligation to do so.  Further, the Complaint in this case does not specify any distinct causes of action arising from the FTI suit alone, so the Court cannot find that the existence of this separate suit revives any claims that Rossi now attempts to assert against Defendants.

[62] In fact, the issue of whether or not Defendants forwarded the expert invoices to Rossi repeatedly arose in the prior suits, and thus evidence on this issue would support or refute claims in both suits.  *See, e.g.*, Affidavit of Frank Wohl in Support of Plaintiff Donna Hitscherich's Motion for Partial Summary Judgment at ¶4-5, App. at 240; *see also* Defendants' Response and Memorandum of Law in Opposition to Plaintiffs' Motions for Partial Summary Judgment at 8, App. at 389; *see also* Defendants' Statement Pursuant to Local Rule 56.1 in Opposition of the Motion for Partial Summary Judgment of Plaintiffs at 5, App. at 555, and Exhibit 1, App. at 574.

for the invoices.  The Court therefore finds that substantially the same evidence would support or refute the claims by the experts/consultants and those now made by Rossi.[63]

The fourth and final question is whether there is any logical relationship between the claims in the New York suits and the counterclaim.  The Fifth Circuit has held that a "logical relationship" exists when the claim and the counterclaim arise from the same "aggregate of operative facts," or "the aggregate core of facts upon which the claim rests activates additional rights, otherwise dormant, in the defendants."[64]  The Court finds a clear logical relationship between the prior claims for unpaid invoices, and the current counterclaims disputing Rossi's role in the agreements that resulted in the invoices, claiming that Rossi never received the invoices, and that Rossi should have been told to object to them, and claiming that Defendants are liable to Rossi for the amounts recovered on the unpaid invoices.  These issues undoubtedly arise from an aggregate of the same operative facts.  Additionally, the aggregate core of facts upon which the prior claims were based, namely the rendering and retention of the invoices, clearly "activated" additional rights in Rossi, which he now asserts in this suit based upon those same facts, albeit under different legal theories.  As such, the Court finds that a logical relationship exists between the claims in the New York suits and the claims asserted by Rossi.

This Court must now determine whether any exceptions to the compulsory counterclaim rule apply.  The only exception applicable to this case is whether the current claims were

---

[63] The Court reiterates that even though judgment was rendered on only the account stated claims, it must look to all claims asserted in the prior suit to determine if the present claims constitute compulsory counterclaims in that litigation.  Thus, the Court looks to whether the evidence underlying Rossi's claims for breach of fiduciary duty and fraud would have supported or refuted the account stated claims, as well as supported or refuted the breach of contract and unjust enrichment claims.  The Court finds that the same evidence would have, in fact, either strengthened or undermined the prior claims, and thus the current claims are barred.

[64] *Nayani v. Horseshoe Entm't*, No. 3:06-CV-01540-M, 2007 WL 1288047at *2 (N.D. Tex. May 2, 2007) (Lynn, J.) (citing *Montgomery Elevator Co. v. Building Eng'g Serv. Co.,* 730 F.2d 377, 380 (5th Cir.1984)); *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970).

matured at the time of pleading in the prior suit.[65]  Rossi argues that Rule 13(a) should not apply because:

> Plaintiff's current claims against Defendants are third-party contribution-type claims which, although arguably arising out of the same "transaction" involved in each of the Experts/Vendors' suit, were not yet "matured" at the time Plaintiff was served, were contingent upon the outcome of the litigation vis a vis the Experts/Vendors and thus wholly outside the purview of Rule 13(a) as a "compulsory counterclaim," as a matter of law.

The Court finds this argument to be without merit.  While a claim for contribution may depend on the actual adjudication of liability, the types of claims that Rossi asserts in the current case do not.  In fact, Rossi's claims are more akin to defenses to liability in the prior action, and his assertion of them now is merely an attempt to relitigate the issue of liability for the unpaid invoices in the New York suits.

Rossi also argues that the prior suits were "separate and individual claims brought by separate and individual claimants," and that "each of the Expert/Vendor's claims were [sic] wholly severable claims, to which LSW was not a party, and thus… Plaintiff did not have any 'counterclaim' against LSW related to LSW's suit against Plaintiff for attorneys' fees incurred during the criminal defense case."[66]  As stated above in its res judicata analysis, the Court finds that this argument also lacks merit.  The prior claims were brought in a single lawsuit, and the fact that multiple experts and vendors sued for unpaid invoices in one lawsuit does not remove Rossi's duty to bring any and all compulsory counterclaims against all parties in that action at that time or be barred from doing so therefrom.[67]

---

[65] *See Harris v. Steinem*, 571 F.2d 119, 122 n. 3 (2d. Cir. 1978).

[66] Plaintiff's Response to Defendants' Motion for Complete Summary Judgment at 11.

[67] The Court again notes that even though FTI brought its account stated claims in a separate lawsuit, Rossi does not distinguish between the alleged breach of fiduciary duty and/or fraud by Defendants in relation to particular expert or consultant invoices.  The Court therefore has ignored this distinction because it is not dispositive to the issue of whether Rossi's claims were required to be brought in the prior suits.  Any claims that Rossi had with regard to FTI's invoices should have been raised at the time FTI filed suit, just as the Court holds that any claims against the Defendants' or the other experts and consultants should have been brought in their action.  Further, even if the Court

In sum, the Court finds that Defendants' Motion for Summary Judgment should be granted as to each of Rossi's claims in this suit because they constitute compulsory counterclaims that Rossi was required to assert in the prior suit, and are therefore barred.  The Court also finds that Rossi's claims are barred by res judicata.

## II.      Collateral Estoppel

Having concluded that Rossi's claims are barred both by Rule 13(a) as compulsory counterclaims and by the doctrine of res judicata, the Court does not reach the merits of Defendants' arguments for collateral estoppel.

CONCLUSION

The Court finds that Defendants' Motion for Summary Judgment should be GRANTED, and Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

SO ORDERED this 19th day of May, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

---

were to find that the "severability" of the experts' claims limited its analysis only to Defendants' claims against Rossi in the prior suit, Rossi's current claims would still constitute compulsory counterclaims.  Defendants asserted claims for breach of contract and account stated liability for the non-payment of their attorneys' fees in Rossi's criminal defense.  Defendants' motion for summary judgment in the prior suit is supported by an affidavit from Wohl, stating that no objections as to "quality or the price of professional services or charges" had been received. Rossi's claims of breach of fiduciary duty by his counsel and/or fraud in their conduct relating to the retention of experts in the course of that defense, and for the failure to forward or object to expert invoices resulting from that defense, would refute this evidence and provide a defense to Defendants' breach of contract and/or account stated claims.  As such, the instant claims are barred as compulsory counterclaims.